# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
September 4, 2019

Lyle W. Cayce
Clerk

No. 18-20808
Summary Calendar

SRI RAGHUNATHA VENKATESWARA BABU BANGARU,

> Plaintiff - Appellant

v.

SHELL U.S. HOSTING COMPANY; SHELL EXPLORATION & PRODUCTION COMPANY,

> Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4.17-CV-629

Before STEWART, Chief Judge, and GRAVES and DUNCAN, Circuit Judges.
PER CURIAM:*

Plaintiff-Appellant Sri Raghunatha Venkateswara Babu Bangaru ("Bangaru") appeals the district court's dismissal of his breach of contract claim against Shell U.S. Hosting Company ("SUSHCO"), his former employer, on summary judgment. He also appeals the district court's denial of his motion

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20808

to strike part of a declaration submitted by SUSHCO. For the reasons below, we AFFIRM the district court's decision.

## I. Background

Bangaru began working for Shell, a global group of energy and petrochemical companies, in 1997. Over the next two decades, he worked in various countries for eleven different companies and subsidiaries under the Shell umbrella.

In December 2014, SUSHCO offered Bangaru a long-term international assignment ("LTIA") in Houston, Texas. Along with his offer letter, Bangaru received the LTIA Employment Terms ("LTIA Terms"), issued in lieu of a written contract, which "set out all the terms and conditions of [his] employment with SUSHCO for the purpose of his LTIA." The LTIA Terms listed Bangaru's base country as India and his host country as the United States. An employee's base country, "established at the time of recruitment," governs, among other things, his compensation, retirement benefits, and severance. Bangaru was a citizen of India when he began working for Shell, so India was designated as his "base country" for the entirety of his employment with Shell.[1] An employee's host country is the country in which the employee "is working as an international assignee."

In January 2016, SUSHCO sent Bangaru a "Repatriation Notice" explaining that his SUSHCO assignment was ending. This notice gave Bangaru until May 1, 2016 to find a new assignment with a Shell entity. Otherwise, he would be repatriated back to his base country, and "the [b]ase

---

[1] In early 2014, Bangaru renounced his Indian citizenship and became a citizen of the United Kingdom. However, Bangaru did not request that Shell update his base country to reflect his new citizenship until April 2015—after he had accepted SUSHCO's offer. Shell denied the request. Shell's policies do not require that an employee's base country match his citizenship.

[c]ountry severance process [would] commence, depending upon the policies of his [b]ase [c]ountry."

Bangaru secured a short-term international assignment in Brunei from May to November 2016. Bangaru did not find another position, and his last day on Shell's payroll was December 31, 2016. Prior to the end of his employment, Bangaru asked to be severed in the United States, his host country. Generally, a terminated employee is repatriated and severed in his base country, as Bangaru's Repatriation Notice indicated. However, Bangaru qualified for an exception to this policy, so Shell agreed to sever him in the United States instead of India. Upon his departure from Shell, Bangaru accepted most of his severance package but rejected the final severance payment and preserved the right to challenge the payment.

Shortly thereafter, Bangaru sued SUSHCO for breach of contract,[2] alleging that his former employer did not follow proper severance procedures and miscalculated Bangaru's severance pay. In July 2018, SUSHCO moved for summary judgment, disputing both allegations. In his contemporaneous response, Bangaru filed (1) a motion to strike two sentences from a declaration submitted by SUSHCO and (2) a motion to withdraw his admissions. SUSHCO responded and filed a motion to strike some of Bangaru's evidence. Four months later, after additional briefing by the parties, the district court granted summary judgment in favor of SUSHCO. Additionally, the court rejected both Bangaru's and SUSHCO's motions to strike as moot. Bangaru appeals the district court's grant of summary judgment and the denial of his motion to strike.

---

[2] Bangaru also sued Shell Exploration and Production Company ("SEPCO") and Shell Oil Products, U.S. The district court dismissed the claims against SEPCO on summary judgment. Shell Oil Products was never served. Neither entity is involved in this appeal.

No. 18-20808

## II. Standard of Review

We review a grant of summary judgment "de novo, applying the same legal standards as the district court." *Prospect Capital Corp. v. Mut. of Omaha Bank,* 819 F.3d 754, 756–57 (5th Cir. 2016). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We review a denial of a motion to strike evidence for abuse of discretion, though such denials are "also subject to harmless error review." *Mahmoud v. De Moss Owners Ass'n, Inc.,* 865 F.3d 322, 327 (5th Cir. 2017).

## III. Discussion

### A. Breach of Contract

This is a suit for breach of contract brought under diversity jurisdiction pursuant to 28 U.S.C. § 1332. As such, the substantive law of the forum state governs. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 206 (5th Cir. 2007). Texas is the forum state in this case. Under Texas law, a breach of contract claim requires a plaintiff to prove four elements: (1) a valid contract exists; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of the breach. *Wells v. Minn. Life Ins. Co.,* 885 F.3d 885, 889 (5th Cir. 2018).

Bangaru alleges that SUSHCO breached the LTIA Terms in two ways. First, SUSHCO did not provide him with a second Repatriation Notice after his Brunei assignment, an End of Assignment Form/Letter, or a Host Country Severance Notice. Second, SUSHCO miscalculated Bangaru's severance pay. We address each of these alleged breaches in turn, keeping in mind that the parties concede that the LTIA Terms are unambiguous, so their interpretation "is a question of law for the court to decide." *Gonzalez v. Denning,* 394 F.3d 388, 392 (5th Cir. 2004). The court's primary consideration is to "ascertain the

4

true intent of the parties as expressed in the instrument," giving "effect to all provisions such that none are rendered meaningless." *Id.*

*1. SUSHCO's Provision of Notice*

Bangaru argues that SUSHCO failed to provide him with notices required by the LTIA Terms: a second Repatriation Notice, an End of Assignment Form/Letter, and a Host Country Severance Notice. As evidence, he points out that SUSHCO admits it did not provide him with these notices. But this admission alone does not prove breach. For SUSHCO to have breached the LTIA Terms by failing to provide these documents, the terms must have required SUSHCO to provide the notices. Bangaru has not, before this court or the district court, pointed to any language in the LTIA Terms requiring SUSHCO provide these notices, nor have we identified any such language.

To begin, the LTIA Terms do not mention any of the notices that Bangaru claims they require. In fact, the terms unambiguously provide that any notice of termination is discretionary: "[T]he employment relationship may be terminated at any time, without notice, either by you or by [SUSHCO]." Bangaru argues that this clause is obviated by the fact the LTIA Terms "incorporate" Shell's International Mobility Policies ("IMPs"), and that the IMPs required these notices. This assertion fails for two reasons.

First, the plain language of the LTIA Terms indicates that the IMPs place a duty on Bangaru, not SUSHCO: the terms state that the IMPs "apply to [Bangaru] and [he is] expected to abide by them." The IMPs are described as "contain[ing] information about benefits which [Bangaru] may or may not be eligible for depending on [his] assignment type." The LTIA Terms do not state (1) that SUSHCO must abide by the IMPs or (2) that SUSHCO guarantees any rights or benefits to Bangaru. In fact, SUSHCO "reserve[s] the right to amend these policies from time to time at its [] discretion." What is more, they explicitly leave the decision to provide notice in SUSHCO's hands,

noting that SUSHCO "may give [Bangaru] a period of notice at the end of your LTIA in line with" the applicable IMP.

Second, even if the LTIA Terms required that SUSHCO adhere exactly to the IMPs, the IMPs do not place a duty on Shell to provide Bangaru with the notices at issue. As to a second Repatriation Notice, Bangaru argues that his short-term international assignment in Brunei restarted the notice period governing his long-term assignment, triggering an obligation to provide a second Repatriation Notice. However, Bangaru does not point to language in the record that supports this assertion. As the district court concluded, the LTIA Terms "govern LTIA employees, not [short-term] employees." Bangaru "points to no specific language in the document that references short-term employees in any manner." Furthermore, evidence submitted by Bangaru states that he was told his Brunei assignment "did not reset or change his current 'at risk' status."

As to the End of Assignment Form/Letter and Host Country Severance Notice, Bangaru points to language in Shell's "HR Guide to Manage Repatriation and Severance for LTIA and LNN Employees" that references HR employees are completing End of Assignment Forms/Letters and Host Country Severance Notices.[3] We agree with the district court that nothing in the HR Guide "suggests that [SUSHCO] is obligated to provide [Bangaru] with these specific documents." First, as discussed above, the LTIA Terms do not require SUSHCO to adhere to the IMPs, whether contained in the HR Guide or not. And second, the language in the HR Guide is directed at HR personnel and mandates their responsibilities. As the Introduction states, "[T]his guide has been developed specifically for use by HR . . . and is not to be distributed outside

---

[3] The IMPs are not in the record. Instead the record contains the HR Guide, which compiles information "collected from relevant sections" of the IMPs.

of the HR function" We don't see, nor has Bangaru directed us to, any language indicating that the processes contained in the HR Guide convey a right to such processes by Bangaru. We agree with the district court that, "taken as a whole, the LTIA [Terms] and [IMP] allow [SUSHCO] broad flexibility regarding the notice process."

In place of pointing to language that supports his right to these notices, Bangaru argues that the district court erred by "improperly shift[ing] the burden to Bangaru . . . since Bangaru did not point to specific language showing a requirement" to provide the notices. According to Bangaru, summary judgment was improper because SUSHCO never "cited any unambiguous contractual provision" sufficient to show the notices weren't required. This is incorrect. Where "the non-movant bears the burden of proof at trial," and the movant "point[s] to an absence of evidence," the non-movant must demonstrate "by competent summary judgment proof that there is an issue of material fact warranting trial." *In re La. Crawfish Producers,* 852 F.3d 456, 462 (5th Cir. 2017). Here, SUSHCO (the movant) asked for summary judgment by pointing to the absence of any language mandating the notices. Therefore, the burden shifted to Bangaru (the non-movant) to show that there was an issue of material fact warranting trial. For the reasons discussed above, Bangaru did not meet this burden.

*2. SUSHCO's Severance Pay Calculation*

Bangaru also argues that SUSHCO breached the LTIA Terms by miscalculating his severance pay. The parties agree that when an employee is severed in the host country, the severance policy of the base country still governs. Therefore, Bangaru's severance pay was calculated using the policy of the specified Shell entity in India. Bangaru argues that the severance pay calculation did not follow "Indian retrenchment law" or an "Indian touchdown requirement" and was therefore incorrect.

No. 18-20808

As the movant, SUSHCO needed to put forth evidence establishing that there was no genuine question that it correctly calculated Bangaru's severance pay. To that end, SUSHCO introduced evidence that HR staff in the United States worked with HR staff in India to calculate Bangaru's severance. The HR staff followed the India Redundancy Guidelines, contained in the record, providing that a terminated employee is eligible for severance pay equal to one month of "guaranteed cash" for every year of employment service, up to six months of insurance benefits, pay for unused vacation, a prorated bonus, end-of-service benefits, and a three-month notice period to find alternate employment, among other things. Based on these calculations, Bangaru was offered almost $160,000 in severance pay in addition to other payments.

Bangaru does not argue that the HR staff failed to follow the Indian Redundancy Guidelines. Instead, he argues that the calculations failed to follow "Indian retrenchment law" and the "Indian touchdown requirement." Neither of these terms are found in the LTIA Terms, the HR Guide, or the India Redundancy Guidelines. Bangaru points to no reference to Indian retrenchment law in any correspondence with Shell. His only reference to the Indian touchdown requirements comes from a July 2014 email sent before he was offered employment with SUSHCO. The email was in reference to repatriation, but Bangaru was not required to repatriate to India.

Instead of explaining what these terms mean or why they were needed to calculate his severance payments, Bangaru puts forth his own calculations, arguing that he is entitled to roughly $1.5 million in severance payments under Indian retrenchment law. The court is left guessing as to what Indian retrenchment law encompasses or how it affects these calculations.

Bangaru also offers the employment contract of an anonymous Shell employee who worked in India and was allegedly provided a different severance package. Bangaru provides no context for this document: there is

neither an allegation nor evidence that this employee was governed by the same employment terms or severance standards as Bangaru. The district court correctly held that it was "unable to determine whether [Bangaru] would have been entitled to the same pay or similar allowances or that other Shell employees in India received similar pay or agreements."

In sum, SUSHCO met its burden as the movant to demonstrate the absence of a genuine issue of material fact. *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). Bangaru failed to counter with evidence that supports his claims. *Id.* (The non-movant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial.") Therefore, we AFFIRM the district court's grant of summary judgment on all claims.

We also AFFIRM the district court's denial of Bangaru's motion to strike. The district court's opinion did not rely on the two sentences Bangaru wished to strike. Even if it did, the two sentences repeat other evidence in the record, including evidence Bangaru submitted. Any abuse of discretion was harmless and doesn't warrant reversing summary judgment. *Mahmoud,* 865 F.3d at 327.

## IV. Conclusion

We AFFIRM the district court's grant of summary judgment to SUSHCO and denial of Bangaru's motion to strike.