RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0006p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――――

ESTHER BUCHANAN, on behalf of herself and a class,

          *Plaintiff-Appellant,*

      *v.*

NORTHLAND GROUP, INC.,

          *Defendant-Appellee.*

No. 13-2523

―――――――――――――

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:12-cv-01011—Janet T. Neff, District Judge.

Argued: October 7, 2014

Decided and Filed: January 13, 2015

Before: SUTTON and KETHLEDGE, Circuit Judges; ROSENTHAL, District Judge.[*]

―――――――――――――

## COUNSEL

**ARGUED:** Daniel A. Edelman, EDELMAN COMBS LATTURNER & GOODWIN LLC, Chicago, Illinois, for Appellant. David M. Schultz, HINSHAW & CULBERTSON LLP, Chicago, Illinois, for Appellee. Theodore Metzler, FEDERAL TRADE COMMISSION, Washington, D.C., for Federal Amicus Curiae. **ON BRIEF:** Daniel A. Edelman, Cathleen M. Combs, Thomas E. Soule, EDELMAN COMBS LATTURNER & GOODWIN LLC, Chicago, Illinois, for Appellant. David M. Schultz, Joel D. Bertocchi, HINSHAW & CULBERTSON LLP, Chicago, Illinois, for Appellee. Theodore Metzler, FEDERAL TRADE COMMISSION, Washington, D.C., Brian Melendez, DYKEMA GOSSETT PLLC, Minneapolis, Minnesota, Donald S. Maurice, Jr., MAURICE & NEEDLEMAN, P.C., Flemington, New Jersey, for Amici Curiae.

―――――――――――――

[*]The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

SUTTON, J., delivered the opinion of the court in which ROSENTHAL, D.J., joined. KETHLEDGE, J. (pp. 10–12), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.   Northland Group made a "settlement offer" to Esther Buchanan to resolve an unpaid debt without disclosing that the statute of limitations had run on the debt.  Claiming that the letter falsely implied that Northland could enforce the debt in court, Buchanan filed a class action on behalf of herself and other similarly situated debtors under the Fair Debt Collection Practices Act.  Northland filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, prompting this question:   Could this offer plausibly mislead an unsophisticated consumer into thinking her lender could enforce the debt in court?  Answer:  Yes, at least at the pleading stage of the proceedings.  We reverse the district court's contrary decision.

I.

LVNV buys "uncollectable" debts at a discount—the older the debts, the greater the discount—and pays Northland Group to collect them.  LVNV purchased a debt of Buchanan's and assigned it to Northland for collection.  In late 2011, Northland sent Buchanan a letter attempting to collect part of the debt.  Here is what the letter said:

**Your past due account balance: $4,768.43**
**Your settlement offer: $1,668.96**

Dear Esther M Buchanan,

LVNV Funding LLC, the current creditor of your account, has assigned the above referenced account to Northland Group, Inc. for collection.  As of the date of this letter, you owe $4,768.43.  Because of interest that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  For further information, write the undersigned or call 866-699-2652 ext 3515.

The current creditor is willing to reduce your balance by offering you a settlement.  We are not obligated to renew this offer.  Upon receipt and clearance

of $1,668.96, your account will be satisfied and closed and a settlement letter will be issued. This offer does not affect your rights set forth below. LVNV Funding LLC has purchased the above referenced account from the above referenced Previous Creditor [National City Bank]. LVNV Funding LLC has placed your account with this agency for collection.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor if different from the current creditor.

Sincerely,

Northland Group, Inc.

R. 1-1.

The "settlement offer" did not disclose two things. It did not say that the Michigan six-year statute of limitations had run on the debt, which would have provided a complete defense to any lawsuit to recover the money. *See* Mich. Comp. Laws § 600.5807(8). And it did not say that a partial payment on a time-barred debt—if, say, Buchanan had not accepted the offer but instead paid $500 to decrease her balance—restarts the statute-of-limitations clock under Michigan law. *See Yeiter v. Knights of St. Casimir Aid Soc'y*, 607 N.W.2d 68, 71 (Mich. 2000).

Such a settlement offer, to Buchanan's mind, falsely implied that Northland held a legally enforceable obligation. On her behalf and on behalf of similarly situated debtors, Buchanan sued Northland for violating the Fair Debt Collection Practices Act. *See* 15 U.S.C. §§ 1692–1692p. Northland moved to dismiss the claim under Civil Rule 12(b)(6). In response, Buchanan claimed that the case implicated a question of fact—Was the letter misleading?—and required discovery, including with respect to the proposed testimony of Dr. Timothy E. Goldsmith, a professor of psychology who has studied consumers' attitudes toward time-barred debt and their understanding of communications like this one. *See* Timothy E. Goldsmith & Nathalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters when Collecting Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010).

The district court rejected Buchanan's discovery request and granted Northland's motion to dismiss, concluding that Northland's letter was not misleading as a matter of law. Buchanan appeals the dismissal of her lawsuit.

II.

The Fair Debt Collection Practices Act bans all "false, deceptive, or misleading" debt-collection practices. 15 U.S.C. § 1692e. As the addition of the term "misleading" confirms, the statute outlaws more than just falsehoods. That is why "[t]ruth is not always a defense," *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011), and that is why even a true statement may be banned for creating a misleading impression. In its illustrative (and non-exhaustive) list of violations, the statute prohibits a false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The Act protects "all consumers," the "shrewd" as well as the "gullible," *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007) (internal quotation marks omitted), from practices that would mislead the "reasonable unsophisticated consumer," one with some level of understanding and one willing to read the document with some care, *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 327 (6th Cir. 2012). Dunning letters that appear misleading only by way of "bizarre," "idiosyncratic," or "nonsensical" readings do not violate the Act. *Lamar*, 503 F.3d at 510, 514 (internal quotation marks omitted).

In considering whether this letter creates a cognizable claim, we agree with two premises of Northland's argument (and the district court's holding). Under Michigan law, as under the law of most states, a debt remains a debt even after the statute of limitations has run on enforcing it in court. *See De Vries v. Alger*, 44 N.W.2d 872, 876 (Mich. 1950); *see also, e.g., Ingram v. Earthman*, 993 S.W.2d 611, 634 n.19 (Tenn. Ct. App. 1998), *abrogated on other grounds by Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141 (Tenn. 2001), *as recognized by Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 461 n.25 (Tenn. 2012). As a result, when the six-year limitations period ran on Buchanan's debt, that meant only that the creditor—LVNV today—could not enforce the debt in court without facing a complete legal defense to it. Legal defenses are not moral defenses, however. And a creditor remains free, in the absence of a bankruptcy order or something comparable *preventing* it from trying to collect the debt, to let the

debtor know what the debt is and to ask her to pay it. There thus is nothing wrong with informing debtors that a debt remains unpaid or for that matter allowing them to satisfy the debt at a discount. For some individuals, such letters may offer a welcome solution to an outstanding debt.

Nor does a "settlement offer" with respect to a time-barred debt by itself amount to a threat of litigation. Even an unsophisticated consumer could not reasonably draw such an inference, as the dissent and we both agree. *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011); *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001).

If we grant these two premises of Northland's argument, doesn't its conclusion follow—that this lawsuit should be dismissed as a matter of law? We think not, for three reasons.

*First*, whether a letter is misleading raises a question of fact. Generally speaking, "a jury should determine whether the letter is deceptive and misleading." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008); *see Grden*, 643 F.3d at 172 (same); *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 613 (6th Cir. 2009) (same). Courts do not lightly reject fact-based claims at the pleading stage. They may do so only after drawing all reasonable inferences from the allegations in the complaint in the plaintiff's favor and only after concluding that, even then, the complaint still fails to allege a plausible theory of relief. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).

That is not to say that all such claims will go to a jury merely because they implicate a question of fact. A claim may be implausible on its face because even an unsophisticated consumer would not be confused, making discovery pointless and jury resolution unnecessary. *See Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776–77 (7th Cir. 2007). Or the claimant may not wish to seek discovery and may agree that a court should resolve the claim as a matter of law. *See Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999). Or the claim may warrant discovery but be appropriate for summary judgment after that. *Lamar*, 503 F.3d at 508 n.2. Through it all, the hurdle to proceed from pleading to discovery remains a low one, requiring only that the plaintiff plead a plausible theory of relief. That reality favors Buchanan.

*Second*, Buchanan submits that evidence supports her claim, and in this instance her theory is sufficiently plausible that she deserves an opportunity to show how. She has already identified an expert in the area, Dr. Timothy E. Goldsmith, a professor of psychology, who plans to testify about consumers' attitudes toward, and their understanding of, time-barred debt. This is not the time or the place to assess whether this evidence will be admissible, whether it will satisfy *Daubert* (if need be), and whether it will materially inform the inquiry. For now, it suffices to say that parties who wish to present evidence in support of their claim usually will be given an opportunity to do so, making summary judgment, not a motion to dismiss, the relevant time for ascertaining whether the claim should be resolved as a matter of law.

The Goldsmith testimony is not the only relevant piece of evidence that could bear on this dispute. The relevant agencies charged with enforcing the Act are in the midst of studying this precise problem. *See* Br. for Federal Trade Commission and Consumer Financial Protection Bureau as Amici Curiae Supporting Appellant at 2–3. In November 2013, the Consumer Financial Protection Bureau asked for input on potential rulemaking regarding time-barred debt. Debt Collection (Regulation F), 78 Fed. Reg. 67,848, 67,875–76 (advance notice of proposed rulemaking given Nov. 12, 2013). According to the CFPB, "[c]onsumers, in some circumstances, may infer from a collection attempt the mistaken impression that a debt is enforceable in court even in the absence of an express or implied threat of litigation." *Id.* at 67,875.

The CFPB posed several questions for public comment directly relevant to this lawsuit, including these: What kinds of data exist with respect to consumers' beliefs about debt collection? Has there been any consumer testing? Do debtors receiving collection letters think they might get sued? Do they understand the consequences of partial payment? Should the agency require additional disclosures when a debt is time barred? If so, what information, and using what language? Are there studies of sample language? The answers to these questions bear on Buchanan's claims. Beyond collecting public comments, the CFPB plans to conduct its own "consumer testing and other research" on these questions. *Id.* at 67,875–76. At this preliminary stage of the case, it seems fair to infer that, if the agency deems these same questions worthy of further study, Buchanan deserves a shot too. A contrary conclusion—that consumer

confusion is not even plausible here—would amount to our own declaration that the CFPB's efforts on this score are a waste of time. We are not prepared to say that at this stage of the case.

Nothing, it is true, compels us to defer to the agencies' view, whether now or after their further study. But their position remains "instructive." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361 (6th Cir. 2012). The FTC sometimes is "in a better position than are courts to determine when a practice is 'deceptive' within the meaning of the [Federal Trade Commission] Act," and thus its judgment deserves respect. *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 385 (1965). That is all the more true when it comes to factual plausibility in a setting that may turn as much on empirical data as on anything else. *See McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1021 (7th Cir. 2014).

*Third*, Buchanan offers a plausible theory of consumer deception and confusion that "nudge[s] [her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The question is whether Northland's letter could plausibly mislead a "reasonable unsophisticated consumer" into thinking her debt is enforceable in court. *See Wallace*, 683 F.3d at 327. One part of this inquiry is easy. When a dunning letter creates confusion about a creditor's right to sue, that is illegal. The Act singles out as unlawful the "false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). "Whether a debt is legally enforceable is a central fact about the character and legal status of that debt." *McMahon*, 744 F.3d at 1020. A misrepresentation about the limitations period amounts to a "straightforward" violation of § 1692e(2)(A). *Id.*

The other part is more difficult. Was *this* letter misleading? One reason to say yes is that a "settlement offer" with respect to a time-barred debt may falsely imply that payment could be compelled through litigation. Formal and informal dictionaries alike contain a definition of "settle" that refers to concluding a lawsuit. On the formal side, one defines the verb as "to conclude (a lawsuit) by agreement between the parties usu[ally] out of court." *Webster's Third New International Dictionary* 2079 (2002). Another defines it as "[t]o decide (a case) by arrangement between the contesting parties." *OED Online*, Oxford University Press (September 2014), http://goo.gl/yd1KF6. A third defines "settlement" as "[t]he resolution of a lawsuit or dispute by settling." *The American Heritage Dictionary of the English Language* (5th ed. 2014),

*available at* http://goo.gl/dPSCMH. On the informal side, Wiktionary defines "settlement agreement" as "[a] contractual agreement between parties to actual or potential litigation by which each party agrees to a resolution of the underlying dispute." *See* http://goo.gl/00xE9s. And Dictionary.com defines "settle" as "to terminate (legal proceedings) by mutual consent of the parties." *See* http://goo.gl/vOmoty. Perhaps the best definition, one that accounts for the various ways an everyman individual might read the terms, appears oddly enough in *Black's Law Dictionary*. It acknowledges that the word is one of "equivocal meaning," "meaning different things in different connections, and the particular sense in which it is used may be explained by the context or surrounding circumstances." *Black's Law Dictionary* 1372 (6th ed. 1990). All of these definitions make it plausible to allege that a "settlement offer" falsely implies that the underlying debt is enforceable in court.

The other problem with the letter is that an unsophisticated debtor who cannot afford the settlement offer might nevertheless assume from the letter that some payment is better than no payment. Not true: Some payment is worse than no payment. The general rule in Michigan is that partial payment restarts the statute-of-limitations clock, giving the creditor a new opportunity to sue for the *full* debt. *See Yeiter*, 607 N.W.2d at 71. As a result, paying anything less than the settlement offer exposes a debtor to substantial new risk. This point is almost assuredly not within the ken of most people, whether sophisticated, whether reasonably unsophisticated, or whether unreasonably unsophisticated. It thus is not hard to imagine how attempts to collect time-barred debt might mislead consumers trying their best to repay. *See McMahon*, 744 F.3d at 1021. Without disclosure, a well-meaning debtor could inadvertently dig herself into an even deeper hole. *See* Debt Collection, 78 Fed. Reg. at 67,876 ("[C]onsumers may believe that when they make a partial payment on a time-barred debt they have only obligated themselves in the amount of the partial payment but in many circumstances that is not true.").

Northland claims that this approach puts us at odds with two fellow circuits. No such conflict exists. In turning two claims under the Act aside, *Huertas* and *Freyermuth* held only that an attempt to collect a time-barred debt is not a thinly veiled threat to sue. *See Huertas*, 641 F.3d at 33; *Freyermuth*, 248 F.3d at 771. On that point we agree, as shown above. But neither

case addressed the possibility that consumers might still be confused about the enforceability of a debt or the pitfalls of partial payment. And neither case, most pertinently, featured a letter offering a "settlement." To the contrary, the one circuit that has reached this issue, the Seventh Circuit, adopted an approach similar to ours. *See McMahon*, 744 F.3d at 1020–22.

Northland further objects that our reasoning is inconsistent with this circuit's prior application of the "least sophisticated consumer" standard. But the cited cases (two-thirds of which are unpublished) do not support its argument. All three arose on summary judgment, not on a motion to dismiss, and all three rejected claims based on bizarre interpretations. *See Lamar*, 503 F.3d at 511; *Clark v. Main St. Acquisition Corp.*, 553 F. App'x 510, 516 (6th Cir. 2014); *Webb v. Asset Acceptance, LLC*, 486 F. App'x 596, 597 (6th Cir. 2012). There is nothing bizarre about our interpretation of Northland's letter.

Northland and its *amici* add that this interpretation will require debt collectors to give legal advice to every debtor about the statute of limitations. But if a debt collector is unsure about the applicable statute of limitations, "it would be easy to include general language about that possibility," *McMahon*, 744 F.3d at 1022, correcting any possible misimpression by unsophisticated consumers without venturing into the realm of legal advice. Proving this is not a herculean task is one of Northland's new letters: "The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC will not sue you for it, and LVNV Funding LLC will not report it to any credit reporting agency." R. 21-3 at 59.

For these reasons, we reverse and remand for further proceedings consistent with this opinion.

—————————

**DISSENT**

—————————

KETHLEDGE, Circuit Judge, dissenting.   Some lawsuits make sense only to lawyers. Here, it is undisputed that Buchanan's debt remains entirely valid, notwithstanding that the debt is no longer enforceable in court.   And it is likewise common ground in this appeal—since the majority agrees, Buchanan agrees (she has not challenged the district court's determination to the contrary) and even the amici agencies agree—that Northland would have been within its lawful rights to send her a letter that simply recited the amount of her long-unpaid debt and demanded payment in full.   The ostensible basis for this lawsuit, rather, is that Northland offered Buchanan a discount—that it offered to accept about 35 cents on the dollar of what she owed, rather than demand payment in full.   One might expect a conscientious debtor either to accept this offer or, at worst, to ignore it.   But Buchanan chose to sue Northland for making it.

Buchanan's claim, such as it is, is that in making this offer, Northland's use of a single word—"settlement"—was misleading as a matter of federal law.   Specifically, in a letter to Buchanan, Northland stated that her creditor "is willing to reduce your balance by offering you a settlement[,]" and that, upon receipt of the discounted amount ($1,668, rather than $4,768), "your account will be satisfied and closed and a settlement letter will be issued."   As a statement of Northland's willingness to accept a reduced amount in satisfaction of Buchanan's debt, that language is straightforward and direct.   But her reading is more gossamer:   Buchanan says that the word "settlement" is one frequently used in connection with lawsuits, which means that the word "settlement" intimates the prospect of legal action, which means that the settlement offer was actually an implied threat to sue, which would amount to a representation that the debt remained enforceable in court, which would be a "misleading representation" in violation of the Fair Debt Collection Practices Act.

This reading of Northland's offer is implausible.   The relevant perspective here is that of an unsophisticated debtor—an unsophisticated debtor, moreover, who by definition has received dunning letters for years *without a lawsuit ever having been brought against her.*   In that context, the mere fact of another collection letter is itself no reason to think that a lawsuit might follow

close behind. And the letter here says nothing about any lawsuit—which is good reason, so far the threat of a lawsuit is concerned, not to distinguish this letter from the legions of letters that surely preceded it. If anything, Northland's willingness to settle the debt at a discount should make the letter seem less threatening, not more.

Buchanan's arguments to the contrary (or more precisely, the arguments of her counsel) reflect a different perspective. Not the perspective of the unsophisticated debtor, but rather our own perspective as lawyers and judges—whose work, by definition, is done through the vehicle of lawsuits. And from that lawsuit-saturated perspective, Buchanan suggests, we should conclude that, of the many different meanings of the word "settle"—many of which have nothing to do with lawsuits—the unsophisticated debtor would read Northland's offer to accept a 65% discount in "settlement" of her account as a threat to sue her instead. But we have no basis to read a single word—"settlement"—from a lawyerly perspective and the rest of Northland's letter from an unsophisticated one. To the contrary, we are bound to apply the unsophisticated-debtor standard all the way through.

Buchanan also argues that Northland's use of the word "settlement" is misleading because "[a]n offer to settle implies a colorable obligation to pay." Complaint ¶ 21; *see also* Appellant Br. at 34 ("Using 'settlement' in the Letter implies a legal obligation"). But Buchanan's premise is wrong—she *does* have a legal obligation to pay her debt, even though that obligation is no longer enforceable in court. *See De Vries v. Alger*, 44 N.W.2d 872, 876 (Mich. 1950) ("The running of the statute of limitations does not cancel the debt, it merely prevents a creditor from enforcing his claim"). Indeed the validity of Buchanan's debt—she did, after all, receive goods or services that she did not pay for—is the reason why Northland undisputedly would have been within its rights simply to demand that she pay all the money she owes.

There remains, as the majority points out, an equitable point—that if a debtor sends a creditor less than the settlement amount, then under Michigan law (and that of many states) the limitations period runs anew and the debt becomes enforceable again in court. Virtually no one, save the creditors themselves, would welcome that result. But Northland's letter nowhere invites that result; and if it arose, that result would be the fault of state substantive law, which we have no license to change. In any event, that case is not the case before us here.

In this case, rather, Buchanan seeks up to $1,000 in statutory damages—for herself, and also for each member of a putative statewide class—for the trouble of reading a letter that offered her a discount on an entirely valid debt that for years she failed to pay. I would reject this claim as a matter of law, rather than continue to make a federal case out of it.

I respectfully dissent.