PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4022
_____


MICHELLE TATIS, Individually and on behalf
of all others similarly situated,
                                        Appellant


v.


ALLIED INTERSTATE, LLC; JOHN DOES 1–25
_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-16-cv-00109)
District Judge: Honorable John M. Vazquez
_____


Argued September 5, 2017
Before: CHAGARES, JORDAN, and HARDIMAN,
*Circuit Judges*.

(Filed: February 12, 2018)

Ari H. Marcus (Argued)
Yitzchak Zelman
Marcus & Zelman
1500 Allaire Avenue, Suite 101
Ocean, NJ 07712
        *Counsel for Appellant*

James C. Martin (Argued)
Kellie A. Lavery
Reed Smith
136 Main Street, Suite 250
Princeton, NJ 08540
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

This appeal arises under the Fair Debt Collection Practices Act (FDCPA or Act). The question presented is whether a collection letter sent to collect a time-barred debt that makes a "settlement offer" to accept payment "in settlement of" the debt could violate the Act's general prohibition against "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. We hold that it could.

I

Over ten years ago, Appellant Michelle Tatis incurred a debt of $1,289.86 to Bally Total Fitness Holding Corp. Appellee Allied Interstate, LLC—a debt collector—sent Tatis

2

a letter dated May 18, 2015 that read as follows: "[The creditor] is willing to accept payment in the amount of $128.99 in settlement of this debt. You can take advantage of this settlement offer if we receive payment of this amount or if you make another mutually acceptable payment arrangement within 40 days . . . ." App. 37. At the time Allied sent its letter, the six-year New Jersey statute of limitations applicable to debt-collection actions had already run. *Tatis v. Allied Interstate, LLC*, 2016 WL 5660431, at \*1, \*3 (D.N.J. Sept. 29, 2016); *see also* N.J. STAT. ANN. § 2A:14-1.

Tatis filed a class action in the United States District Court for the District of New Jersey, alleging that Allied's letter violated the FDCPA. The complaint alleged that Tatis interpreted the word "settlement" in the letter to mean that she had a "legal obligation" to pay the debt, and the least-sophisticated debtor would hold a similar belief. Compl. ¶ 27, App. 32. She also claimed the letter was a "false, deceptive, or misleading representation or means in connection with" collecting the debt. Compl. ¶ 37, App. 34. Specifically, Tatis alleged that Allied "[f]alsely represent[ed] the legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A)," made "false threats to take action that cannot legally be taken in violation of 15 U.S.C. § 1692e and 1692e(5)," and used "false representations and/or deceptive means to collect or attempt to collect [the] debt in violation of 15 U.S.C. § 1692e(10)." Compl. ¶ 38, App. 34.

Allied filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, and the District Court granted the

motion.[1] *See Tatis*, 2016 WL 5660431, at \*10. In doing so, the Court looked primarily to our decision in *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 32–33 (3d Cir. 2011) (per curiam), which it read to hold that an attempt to collect a time-barred debt does not violate the FDCPA unless it is accompanied by the threat of legal action. *See Tatis*, 2016 WL 5660431, at \*5. And because Allied's use of the word "settlement" did not constitute threatened legal action, the Court found dismissal of the complaint appropriate. *Id.* at \*8–9. The Court also found it significant that, under New Jersey law, partial repayment of the debt would not revive the statute of limitations. *Id.* at \*9. Thus, the letter could not deceive or mislead a consumer into inadvertently reviving a time-barred legal claim. *Id.*[2]

Tatis filed this appeal.

---

[1] Allied filed a motion for judgment on the pleadings, but the District Court construed it as a motion to dismiss for failure to state a claim because it was filed before the pleadings were closed. *Tatis*, 2016 WL 5660431, at \*3.

[2] Tatis also alleged that Allied used "unfair or unconscionable means" when attempting to collect the debt. The District Court dismissed that count, *Tatis*, 2016 WL 5660431, at \*9, and Tatis has not made an argument challenging that ruling on appeal, Tatis Br. 4–5. *See Linder & Assocs., Inc. v. Aetna Cas. & Sur. Co.*, 166 F.3d 547, 552 n.5 (3d Cir. 1999).

4

## II[3]

### A

We review de novo the District Court's order dismissing Tatis's complaint under Rule 12(b)(6). *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 (3d Cir. 2000). "[W]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### B

Congress enacted the FDCPA to curb "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Among other things, the Act seeks "to eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* § 1692(e). To effectuate these purposes, Congress

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

proscribed the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and provided a list of sixteen examples of such prohibited conduct. *Id.* § 1692e. These include making "false representation[s]" about "the character, amount, or legal status of any debt," *id.* § 1692e(2)(A), and "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken," *id.* § 1692e(5). As we have noted, "[b]ecause the list of the sixteen subsections is non-exhaustive, a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of section 1692e even if it does not fall within any of the subsections." *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011).

The FDCPA is remedial, so we "construe its language broadly, so as to effect its purpose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). In addition, we employ a "least sophisticated debtor" standard to evaluate whether a particular debt-collection practice violates the Act. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). This standard aims to "protect[] the gullible as well as the shrewd," *id.* (alteration in original) (quoting *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008)), but it nevertheless "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care," *id.* (alterations in original) (quoting *Rosenau*, 539 F.3d at 221); *see also Lesher*, 650 F.3d at 997 (characterizing the least-sophisticated debtor standard as a "low standard"). The standard is objective, "meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen*, 791 F.3d at 419.

C

To prevail on her FDCPA claim, Tatis must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Only the fourth element is disputed in this appeal.

In arguing whether Allied violated the FDCPA, the parties offer competing interpretations of our opinion in *Huertas*. Allied contends that *Huertas* imposed a "threat of litigation" requirement that must be present for an attempt to collect a time-barred debt to violate the FDCPA. By contrast, Tatis attempts to distinguish *Huertas*, arguing that an "offer to settle may mislead the least sophisticated [debtor] into believing that a time-barred debt is legally enforceable, even when litigation is not threatened." *Tatis*, 2016 WL 5660431, at *2.

In *Huertas*, the plaintiff received a letter seeking to collect a time-barred debt. 641 F.3d at 31. Suit was brought under 15 U.S.C. § 1692e(2)(A), alleging that the collection letter Huertas received falsely represented the legal status of his debt which, like Tatis's, was time-barred under New Jersey law. *Huertas v. Galaxy Asset Mgmt.*, 2010 WL 936450, at *4 (D.N.J. Mar. 9, 2010); *see also Huertas*, 641 F.3d at 32. We disagreed for several reasons.

First, we explained that Huertas's debt remained valid under New Jersey law even after the statute of limitations had run. *Huertas*, 641 F.3d at 32. But even though the debt was still

7

owed, Huertas "ha[d] a complete legal defense against having to pay it." *Id.* Next, we explained that "when the expiration of the statute of limitations does not invalidate a debt, but merely renders it unenforceable, the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts." *See id.* at 32–33. In reaching this conclusion, we cited with approval the Eighth Circuit's decision in *Freyermuth v. Credit Bureau Services, Inc.*, 248 F.3d 767, 771 (8th Cir. 2001). Consistent with *Freyermuth*, "Huertas's FDCPA claim hinge[d] on whether [the collection] letter threatened litigation," as "analyzed from the perspective of the 'least sophisticated debtor.'" *Huertas*, 641 F.3d at 33 (quoting *Brown*, 464 F.3d at 453). We concluded that the letter—which informed Huertas that his debt had been reassigned and requested that he contact the agency to "resolve this issue"—contained no such impermissible threat. *Id.*

Thus, *Huertas* stands for the proposition that debt collectors do not violate 15 U.S.C. § 1692e(2)(A) when they seek voluntary repayment of stale debts, so long as they do not threaten or take legal action. But the FDCPA sweeps far more broadly than the specific provision found in § 1692e(2)(A). It prohibits "*any* false, deceptive, *or misleading representation*" associated with debt-collection practices. 15 U.S.C. § 1692e (emphasis added). Accordingly, this appeal requires us to decide whether collection letters may run afoul of the FDCPA by misleading or deceiving debtors into believing they have a legal obligation to repay time-barred debts even when the letters do not threaten legal action.

D

8

Since *Huertas*, three other United States Courts of Appeals have addressed the question presented in this appeal. All three have determined that, even absent threats of litigation, it is plausible that offers to "settle" time-barred debts could mislead the least-sophisticated debtor.

The first of the three decisions is *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014). In *McMahon*, the Seventh Circuit held that an offer to settle a time-barred debt may violate the FDCPA if it "uses language . . . that would mislead an unsophisticated consumer into believing that the debt is legally enforceable." *Id.* at 1020. In particular, the court observed that "a settlement offer on a timebarred debt implies that the creditor could successfully sue on the debt." *Id.* at 1022; *see also id.* at 1021 ("If a consumer received an 'offer for settlement' and searched on Google to see what is meant by 'settlement,' she might find the Wikipedia entry for 'settlement offer,'" which includes a discussion of civil lawsuits). Accordingly, "[i]f unsophisticated consumers believe either that the settlement offer is their chance to avoid court proceedings where they would be defenseless, or if they believe that the debt is legally enforceable at all, they have been misled, and the debt collector has violated the FDCPA." *Id.* at 1022. The *McMahon* court also stated that the Act "cannot bear" any reading requiring a threat of litigation, noting that "[t]he plain language of the FDCPA prohibits not only threatening to take actions that the collector cannot take, but also the use of any false, deceptive, or misleading representation." *Id.* at 1020–21.

A year after *McMahon*, the Sixth Circuit in *Buchanan v. Northland Group, Inc.* held that a settlement offer could "plausibly mislead an unsophisticated consumer into thinking her lender could enforce the debt in court." 776 F.3d 393, 395

9

(6th Cir. 2015). The court supported this conclusion by looking to definitions of the terms "settle," "settlement," and "settlement agreement" in six formal and informal dictionaries. *Id.* at 399 (providing direct quotations from *Webster's Third New International Dictionary*, *The Oxford English Dictionary Online*, *The American Heritage Dictionary of the English Language*, *Wiktionary*, *Dictionary.com*, and *Black's Law Dictionary*). Though each source provided numerous definitions, they all included one that referred to the conclusion and/or the avoidance of a lawsuit. *Id.* And like *McMahon*, the *Buchanan* court observed that "the addition of the term 'misleading' confirms[ that] the statute outlaws more than just falsehoods[,] . . . [such that] even a true statement may be banned for creating a misleading impression." *Id.* at 396 (citation omitted). After *Buchanan*, the Fifth Circuit joined the chorus, endorsing the same view expressed by the Sixth and Seventh Circuits. *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 513 (5th Cir. 2016).

Although we are not bound by these precedents of our sister courts, we are persuaded that their considered view is the best interpretation of the FDCPA. As the Seventh Circuit noted in *McMahon*, construing the Act to *require* a threat of legal action for any FDCPA violation interposes a mandate that is not found in its text. 744 F.3d at 1020–21. Section 1692e prohibits three discrete categories of conduct: false, misleading, or deceptive representations. So adding a "threat of litigation" requirement to all time-barred debt-collection efforts curtails the reach of the Act by excising conduct otherwise covered by the terms "deceptive" or "misleading." Common sense, our case law, and traditional tools of statutory interpretation foreclose such a construction.

10

For example, "in certain contexts[,] a completely accurate statement can be deceptive or misleading." *Campuzano-Burgos*, 550 F.3d at 301; s*ee also Buchanan*, 776 F.3d at 396 (noting that the term "misleading" bans "more than just falsehoods"). Moreover, a communication subject to the FDCPA is deceptive if "it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 298 (quoting *Rosenau*, 539 F.3d at 222). Thus, conduct by a debt collector can be unlawfully misleading or deceptive while still falling short of an explicit threat of litigation. Since our task is "to give effect, if possible, to every clause and word of a statute," *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)), we decline Allied's invitation to construe the FDCPA in a manner that narrows the broad language Congress enacted. *See Brown*, 464 F.3d at 453 (noting that we "construe [the FDCPA's] language broadly, so as to effect its purpose"); *see also Disabled in Action v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008) (noting the Court "assume[s] . . . that every word in a statute has meaning and avoid[s] interpreting one part of a statute in a manner that renders another part superfluous").

We also agree with our sister courts that, in the specific context of a debt-collection letter, the least-sophisticated debtor could be misled into thinking that "settlement of the debt" referred to the creditor's ability to enforce the debt in court rather than a mere invitation to settle the account. App. 37. *See Buchanan*, 776 F.3d at 395; *McMahon*, 744 F.3d at 1021. As the *Buchanan* court's survey of sources suggests, multiple dictionaries define "settle" to refer not only to "settling accounts," but also to the avoidance or resolution of

11

litigation.[4] *See* 776 F.3d at 399. Moreover, the chance that the letter could mislead the least-sophisticated debtor increases with the use of phrases such as "settlement offer," which *Black's Law Dictionary* defines as "[a]n offer by one party to settle a dispute amicably (usu[ally] by paying money) to avoid or end a lawsuit or other legal action." (10th ed. 2014).

These textual sources and the reasoning of the Fifth, Sixth, and Seventh Circuits indicate that Tatis has "state[d] a facially plausible claim for relief." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 147 (3d Cir. 2013). Because the words "settlement" and "settlement offer" could connote litigation, the least-sophisticated debtor could be

---

[4] Our own survey confirms this point. *Settle*, CONCISE OXFORD DICTIONARY OF CURRENT ENGLISH (7th ed. 1982) ("[T]erminate (lawsuit) by mutual agreement."); *Settle*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000) ("To decide (a lawsuit) by mutual agreement of the involved parties without court action."; "To come to an agreement, especially to resolve a lawsuit out of court."); *Settle*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (3d ed. 1993) ("[T]o conclude (a lawsuit) by agreement between the parties usu. out of court."); *see also Settlement*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000) ("An arrangement, adjustment, or other understanding reached, as in financial or business proceedings: *a divorce settlement*."); *Settlement*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (3d ed. 1993) ("[P]ayment or adjustment of an account: satisfaction of a claim by agreement often with less than full payment.").

misled into thinking Allied could legally enforce the debt. *Cf., e.g.*, *Huertas*, 641 F.3d at 33 (analyzing a letter using the more general verb "to resolve"). We recognize that some debtors might properly interpret Allied's letter as referring solely to the settlement of an account. *See Buchanan*, 776 F.3d at 400–01 (Kethledge, J., dissenting) (noting that many debtors receive multiple collection letters without a suit ever being brought). But others may not. *See Wilson*, 225 F.3d at 354 (noting that the "least sophisticated debtor" standard is lower than the "reasonable debtor" standard). Both the context in which the letter is received and the available textual sources indicate that, far from being a "bizarre or idiosyncratic interpretation[]" not covered by the least-sophisticated debtor standard, interpreting the settlement offer as creating a legally-enforceable obligation is a mistake even a debtor "willing[] to read with care" might make. *Campuzano-Burgos*, 550 F.3d at 299 (quoting *Rosenau*, 539 F.3d at 221).

In sum, because we conclude that the least-sophisticated debtor could plausibly be misled by the specific language used in Allied's letter, we will vacate the District Court's order granting Allied's motion to dismiss and remand for further proceedings. In doing so, we reiterate what we said both in *Huertas* and elsewhere: standing alone, settlement offers and attempts to obtain voluntary repayments of stale debts do not necessarily constitute deceptive or misleading practices. *See Huertas*, 641 F.3d at 32–33; *see also Campuzano-Burgos*, 550 F.3d at 299 (noting that "[t]here is nothing improper about making a settlement offer"). Nor do we impose any specific mandates on the language debt collectors must use, such as requiring them to explicitly disclose that the statute of limitations has run. We do not, therefore, hold that the use of the word "settlement" is "misleading as a matter of federal

13

law." *Buchanan*, 776 F.3d at 400 (Kethledge, J., dissenting). Rather, in keeping with the text and purpose of the FDCPA, we merely reiterate that any such letters, when read in their entirety, must not deceive or mislead the least-sophisticated debtor into believing that she has a legal obligation to pay the time-barred debt. *See, e.g.*, *Caprio*, 709 F.3d at 149 (noting that "even the 'least sophisticated debtor' is expected to read any notice in its entirety"); *Huertas*, 641 F.3d at 33 (examining the specific language used in the letter from the perspective of the least-sophisticated debtor); *Campuzano-Burgos*, 550 F.3d at 300 (analyzing letters "as a whole").

## III

For the reasons stated, we will vacate the District Court's order granting Allied's motion to dismiss and remand the case for further proceedings consistent with this opinion.