NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1891
_____

SEAN PARK,

Appellant

v.

TEMPLE UNIVERSITY; AMID ISMAIL;
LEONA SPERRAZZA; JOHN DOES 1-10
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:16-cv-5025)
District Judge:  Hon. J. William Ditter, Jr.
_____

Argued
October 31, 2018

Before:  CHAGARES, JORDAN, and VANASKIE, *Circuit Judges*

(Filed: December 11, 2018)

Zachary A. Meinen
Joseph W. Montgomery, II   [ARGUED]
Montgomery Law
1420 Locust Street
Suite 420
Philadelphia, PA   19102
    *Counsel for Appellant*

Neil J. Hamburg   [ARGUED]
Christa F. High
Hamburg & Golden
1601 Market Street
Suite 3310
Philadelphia, PA   19103
        *Counsel for Appellees*

_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Dr. Sean Park appeals the dismissal of his amended complaint against Temple University and two administrators in its school of dentistry, Dean Amid Ismail and Associate Dean Leona Sperrazza (collectively "the Defendants"). He contends that they violated his right to procedural due process under the Constitution and that the District Court should have let that claim proceed against them. He also says that the District Court erred in summarily dismissing his state law claims. We will vacate and remand, except as to the denial of the due process claim against Sperrazza, which we will affirm.

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

## I.    BACKGROUND

### A.    Factual Allegations[1]

Park is a dentist who surrendered his licenses to practice in California and Texas after admitting to disciplinary charges brought against him by licensing authorities in those states. Those charges, according to uncontested statements by Sperrazza in a hearing transcript attached to the amended complaint, involved Park's submission to insurance companies of advertising materials and certificates that falsely held him out to have a particular dental specialty. After he surrendered his California license, Park applied for and was accepted to a graduate program at Temple's school of dentistry.[2] Temple never asked about the status of his licenses during the application process or for most of his tenure in the program.[3]

---

[1] Because the District Court's decision was premised on Federal Rule of Civil Procedure 12(b)(6), the facts described here are based, unless otherwise noted, upon the amended complaint and appropriate extrinsic materials, including the hearing transcripts attached to the amended complaint and motion to dismiss, and the Temple Honor Code referenced in the amended complaint and attached to the motion to dismiss. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 & n.7 (3d Cir. 2016) (observing that, under Rule 12(b)(6), courts may consider the complaint, "'document[s] *integral to or explicitly relied* upon in the complaint,' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document'" (citations omitted)).

[2] It is not clear from the amended complaint when Park surrendered his Texas license. That, however, is not material to our analysis.

[3] The amended complaint does not say how long the prescribed course of the graduate program was, nor precisely how long Park was a student in the program before the events at issue here took place.

3

On June 2, 2016, however, Dean Ismail, Associate Dean Sperrazza, and another Temple official questioned Park because a patient had learned of and reported his loss of a license to practice dentistry. In response to that questioning, Park disclosed that he had surrendered his licenses and explained "that the surrenders were based on allegations involving billing, advertising, and forgery of documents at a dental practice for which [he] had previously worked." (App. at 31.) He also stated that he would provide more detail in a letter from his attorney. That letter was promptly forthcoming and described Park's loss of practice privileges, including that he had "necessarily conceded all charges made against him[.]" (App. at 32.)

Temple, a public institution, then instituted two separate disciplinary hearings against Park. The first was based on a charge that Park had violated the Student Conduct Code[4] by "[f]ail[ing] to inform [Temple] of the voluntary surrender of [his] license to practice dentistry by the California Board of Dentistry." (App. at 33-34.) The second was based on a charge that Park had violated the Student Conduct Code by "[f]ail[ing] to fully and accurately disclose, under direct questioning by [Ismail and Sperrazza] during a formal investigation of a possible violation of the … Honor Code, the specific charges brought against [Park in California and Texas.]" (App. at 35.)

The two hearings were strikingly similar. The panel members at both were, with one exception, the same.[5] Both hearings addressed Park's statements to Ismail and

---

[4] Violations of the Student Conduct Code also constitute violations of the Honor Code. Temple proceeded against Park under the Honor Code.

[5] In his opening brief, Park acknowledges that one of the two student panel members

4

Sperrazza at the June 2 meeting. Sperrazza was Temple's only witness at the hearings, and she testified at both that Park's statements at the June 2 meeting were inconsistent with the letter from his attorney.

Under the Honor Code, a hearing panel decides whether a student has committed a violation and, if so, recommends a punishment, but the Dean, in his or her discretion, actually decides upon the sanction. At the end of each of Park's hearings, the panel found that Park had violated the Honor Code. The first panel recommended probation, and the second recommended expulsion. Dean Ismail decided to expel Park. Park appealed that decision but his appeal was denied after a faculty board reviewed his case.

### B. Procedural History

After Temple upheld Park's expulsion, he filed the present lawsuit, seeking damages. His complaint, as amended, alleges a parade of improprieties in Temple's disciplinary process, only some of which are relevant here. In particular, it avers that the second hearing was a "do-over" designed to achieve Ismail's desired outcome of expulsion, and that the Defendants manipulated the process and violated Temple's rules to realize and conceal that goal. It also maintains that the second panel was biased because it was tainted by its prior knowledge of the case and its failure to apply Temple's own rules. Finally, it complains that the Defendants failed to apply principles of res judicata at the second hearing and so deprived Park of the probation that had been recommended by the first panel.

---

was replaced at the second hearing.

5

The Defendants responded to Park's initial complaint with a motion to dismiss, which was granted, and Park was given leave to amend. He did so, and the amended complaint, the operative pleading here, contains a constitutional due process claim, brought pursuant to 42 U.S.C. § 1983, and various state law claims. The Defendants then filed a second motion to dismiss and a motion for summary judgment. The District Court granted the former and denied the latter as moot.

The Court rejected Park's § 1983 claim, concluding that there was no due process violation. In reaching that conclusion, it resolved several issues, but only two – bias and res judicata – are raised in this appeal.[6] Regarding bias, the Court reasoned, in relevant part, that the second panel members' prior service on the first panel did not suggest bias and that those panel members were likely not biased against Park, given that they had recommended leniency at the first hearing. Regarding res judicata, it determined that Park had offered "no precedent or cogent reason" that res judicata should apply to his disciplinary proceedings and that, in any event, Park could not have invoked res judicata because the "cause[s] of action" in the two hearings were distinct. (App. at 18.) After dismissing the § 1983 claim, the Court summarily dismissed the state law claims in the amended complaint. This appeal followed.

---

[6] Any challenges to the District Court's resolution of the other issues have been forfeited. *United States v. Jackson*, 849 F.3d 540, 555 n.13 (3d Cir. 2017).

6

## II. DISCUSSION[7]

Park raises three arguments on appeal. First, he says that his procedural due process rights were violated because of bias in the disciplinary process; next, he asserts that his state law claims should not have been rejected without analysis; last, he argues that his procedural due process rights were violated by the Defendants' failure to apply res judicata to the second hearing. We conclude that Park's amended complaint does state a due process claim for bias, that his state law claims should not have been summarily dismissed, but that procedural due process does not require the application of res judicata here.

As to the bias claim, Park argues that the second panel was not impartial because practically all of its members served on the first panel and hence had prior knowledge of the case. He also maintains that his claim of bias is supported by the fact (in his view) that re-empaneling the same panel members was a "significant and unfair" violation of Temple's rules, which itself offends due process. (Opening Br. at 39, 42, 44.) In his telling, the bias of the panel was not accidental but rather the result of a scheme by Ismail to expel him, as evidenced by the Dean's reuse of panel members, his intimidation of witnesses,

---

[7] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1343(a)(3). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a ruling on a motion to dismiss. *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018). In doing so, "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Id.* (citation omitted). "To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation and internal quotation marks omitted).

and his withholding of evidence. We agree with Park that he was deprived of an unbiased decisionmaker, but for different reasons than the ones he emphasizes.

An impartial decisionmaker is a requirement of procedural due process in the school discipline setting. *Sill v. Pa. State Univ.*, 462 F.2d 463, 469 (3d Cir. 1972) (discussing general principles of due process in a school discipline case); *see also United States v. Cross*, 128 F.3d 145, 148 (3d Cir. 1997) (observing that due process always requires an impartial tribunal). That view has long been widely held. *E.g.*, *Doe v. Miami Univ.*, 882 F.3d 579, 601-02, 604 (6th Cir. 2018); *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 675 (7th Cir. 2016); *Gorman v. Univ. of R.I.*, 837 F.2d 7, 15 (1st Cir. 1988). But, that being said, administrative decisionmakers are presumed to be impartial, and only evidence of "actual bias or a likelihood of bias" can support a due process claim. *Matter of Seidman*, 37 F.3d 911, 924-26 (3d Cir. 1994); *see also Withrow v. Larkin*, 421 U.S. 35, 47, 55, 58 (1975) (recognizing the lack-of-bias presumption and stating that, at minimum, a risk of actual bias must be shown to raise a valid due process claim).

We discern two primary accusations of bias from the various allegations in the amended complaint: first, that the panel members who recommended expulsion, having served on the earlier panel, had prior knowledge of the case that affected their thinking; and second, that the panel members relied on "what they thought was best practice or the most ethical thing to do, when they should have been considering the rules of Temple[.]" (App. at 46.) As to the first point, contrary to Park's argument, a decisionmaker's prior familiarity with a case does not in itself suggest bias or unfairness. *Withrow*, 421 U.S. at 50 n.16, 55, 58; *Matter of Seidman*, 37 F.3d at 925. That conclusion holds true in the

8

school discipline setting, as in others. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 567-68 (6th Cir. 2011). And, moreover, "[t]here is no evidence in the record … which suggests bias[,]" whether on the basis of "prior knowledge of the charge of academic misconduct" or otherwise. *Nash v. Auburn Univ.*, 812 F.2d 655, 666 (11th Cir. 1987).[8]

Park also complains that having basically the same panel at both hearings was a "significant and unfair" deviation from Temple's rules, and that that is enough to support a due process claim. (Opening Br. at 39, 42, 44.) But "the Due Process Clause is implicated only when an agency violates regulations mandated by the Constitution or by law; or when 'an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency.'" *Tolchin v. Supreme Court of N.J.*, 111 F.3d 1099, 1115 (3d Cir. 1997) (citation omitted). Assuming for the sake of argument that "significant and unfair" deviation is the correct standard to apply in reviewing Temple's adherence to its own rules, that standard has not been satisfied here. Park alleges in only a conclusory fashion that reusing the

---

[8] Park directs us to *Meyers v. Alldredge*, 492 F.2d 296 (3d Cir. 1974), and *Mattern v. Mathews*, 582 F.2d 248 (3d Cir. 1978), for the proposition that a decisionmaker's prior involvement in a case violates due process. Those cases, however, simply reflect the principle that "[w]hat process is due depends upon the forum in which it is administered and the underlying circumstances." *Main Road v. Aytch*, 565 F.2d 54, 58 (3d Cir. 1977). Invoking that principle, we have treated *Meyers* as relating specifically to the context of prison discipline. *Id.* And, the language from *Mattern* that Park cites appears in a list of requirements related specifically to hearings for "recipients of Title II [social security] benefits who are subject to recoupment." *Mattern*, 582 F.2d at 259. Neither *Meyers* nor *Mattern* sets out the general due process rules for administrative decisionmaking, which, as explained above, do not forbid a decisionmaker from having prior knowledge of the matters at issue. Indeed, if due process generally forbade a decisionmaker from ever having dealt previously with a party's matter, no district judge could consider related or remanded cases, which is obviously not the way the justice system works.

9

hearing panel members violated Temple's rules, so we need not accept that assertion as true. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016).[9] But even if Park had properly alleged a violation of Temple's rules, that violation was not "significant and unfair." The second panel members' prior exposure to Park's case simply does not, standing alone, suggest unfairness in the disciplinary process.

Despite that weakness, Park has managed to state a claim of bias that should have survived the motion to dismiss. In discussing the alleged bias of the panel members, Park reviewed at length Dean Ismail's supposed scheme to expel him, and those allegations raise the issue of the Dean's bias.[10] It is those allegations that are sufficient to go forward.

As a threshold matter, Dean Ismail was a "decisionmaker" who, for due process purposes, was required to be impartial. He is the person responsible for rendering decisions on Honor Code sanctions. *Cf. Heyne*, 655 F.3d at 567 ("To insure 'fundamentally fair procedures,' school officials *responsible for deciding whether to exclude a student from school* must be impartial." (emphasis added)).

---

[9] The only factual allegations in the amended complaint that arguably support this point say, in essence, that panels are "intended to convene with a 'clean slate[,]'" i.e., without prior exposure to the case. (App. at 41.) But, there is no reason to believe that reusing panel members actually violates Temple's rules. In fact, Temple's Honor Code, which the Defendants attached to their motion to dismiss and which Park cites in his amended complaint, nowhere prohibits reusing panel members.

[10] We conclude that the issue of Dean Ismail's bias is properly before us, notwithstanding that it received less than fully direct attention in Park's briefing and was discussed in a limited fashion in the District Court. *Cf. United States v. Albertson*, 645 F.3d 191, 196 n.3 (3d Cir. 2011) (observing that questions raised implicitly by arguments in an opening brief are adequately presented on appeal).

The amended complaint, read in the light most favorable to Park, supports the view that Ismail was biased against him. It alleges that, after the first panel recommended that Park remain at Temple, "the Defendants convened a second hearing" upon Ismail's insistence and as a "'redo' hearing[,]" "on the same charge and with the same core evidence, to obtain the result that Defendant Ismail wanted -- the expulsion of Dr. Park." (App. at 40, 47.) It contends that, even though Park provided all information required by Temple and violated no Temple rule, the second panel did indeed recommend expulsion and Ismail did expel Park. The amended complaint asserts that the Dean concealed the repetitive nature of the hearings by selecting the same panel members for both hearings and withholding key information from Park, including the first panel's recommended sanction. And, the amended complaint alleges that the Defendants "intimidated and/or dissuaded other Temple faculty from testifying on Dr. Park's behalf." (App. at 46.) In short, the pleading – if taken as true – plausibly alleges that Ismail desired to expel Park and so manipulated the proceedings to achieve and conceal that goal. The allegations may turn out to be totally unfounded, but they are adequately pled, and, at the motion-to-dismiss stage, that is all that matters.

In sum, we conclude that the amended complaint sufficiently alleges that Dean Ismail was biased when he made the decision to expel Park and hence deprived Park of procedural due process. The District Court's dismissal of the due process claim was therefore in error.[11]

---

[11] The Defendants argue that Ismail and Sperrazza are entitled to qualified immunity, which protects state officials from suit unless they have "violated a statutory or

11

Although Park has made out a procedural due process claim against Dean Ismail and perhaps Temple,[12] he has not done so against Associate Dean Sperrazza. The amended complaint fails to connect her to any misconduct. In general, "[a] defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved[.]'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations omitted). And, as has been persuasively observed, "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct[,]" cannot show the necessary personal involvement or meet the notice pleading standards of Federal Rule of Civil Procedure 8(a). *E.g.*, *Engel v. Buchan*, 710 F.3d 698,

---

constitutional right [that] was 'clearly established' at the time of the challenged conduct." *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168-69 (3d Cir. 2016) (citation omitted). Here, however, the amended complaint alleges that Ismail violated Park's constitutional right to an unbiased decisionmaker during his school disciplinary proceedings. And, as suggested by the foregoing analysis of "our own precedent [and the] consensus of authority among the courts of appeals[,]" that right was clearly established in 2016. *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018). Indeed, the Sixth Circuit has deemed that right to have been clearly established well before then. *Doe*, 882 F.3d at 604; *Heyne*, 655 F.3d at 568. Thus, Dean Ismail is not eligible for qualified immunity at this stage. As to Associate Dean Sperrazza, our conclusion that the amended complaint states no claim against her obviates the need to determine whether she is immune.

[12] The Defendants have not questioned whether Temple may be liable for the Dean's conduct, and the District Court did not pass upon that issue. The only possible theory of liability against Temple is that set out in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and that theory does not permit claims based upon respondeat superior. *Id.* at 691; *cf. Franks v. Temple Univ.*, No. 11-879, 2011 WL 1562598, at *3 (E.D. Pa. Apr. 26, 2011) (treating Temple as a municipality for purposes of § 1983 and *Monell* liability). We leave it to the District Court to consider in the first instance whether Temple may be subject to liability under *Monell*.

710 (7th Cir. 2013) (quoting *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008));

*Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012). A court must be able

to discern "who is responsible for what" from the operative pleading. *Engel*, 710 F.3d at

710.

Here, the allegations that refer to Sperrazza directly show only that she was involved

in the initial questioning and investigation of Park and that she was Temple's witness at

both hearings. They do not suggest that she had any other involvement in the proceedings.

In addition, her position as Associate Dean for Patient Care is not one that has any authority

or specified role in the disciplinary process. We cannot ascertain, therefore, which

generalized allegations apply to her or whether there is anything linking her to Ismail's

alleged bias.[13] Consequently, Park has failed to state a due process claim against Sperrazza

and we will affirm the District Court's dismissal of that claim against her.

Turning to the state law claims, Park argues that they are supported by diversity

jurisdiction and therefore should not have been summarily dismissed. It appears that the

District Court intended to decline to exercise supplemental jurisdiction under 28 U.S.C.

§ 1367(c), after dismissing Park's sole federal claim. But Park's complaint alleges that he

is a citizen of California, that the Defendants are citizens of Pennsylvania, and that the

amount in controversy exceeds $75,000. That is sufficient to plead diversity jurisdiction,

so dismissal for lack of supplemental jurisdiction was improper. 28 U.S.C. § 1332; *Auto-*

---

[13] The amended complaint does state that "[a]ll named defendants worked individually and/or in conspiracy to violate Plaintiff's rights complained of herein." (App. at 50.) But we do not take conclusory allegations of conspiracy as true. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

*Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 396 (3d Cir. 2016). The Defendants concede the point.

They nevertheless ask us to rule on the merits of Park's state law claims. We may have authority to do so, *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 121, 128 (3d Cir. 1999), but, "[g]enerally, in the absence of exceptional circumstances, we decline to consider an issue not passed upon below[,]" *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 545 (3d Cir. 2017) (citation omitted). Here, the District Court never addressed the merits of Park's state law claims, and no exceptional circumstances are present to warrant our addressing them now. We will therefore remand the state law claims for the District Court to consider them in the first instance.

Finally, we turn to Park's res judicata argument. Given our precedent, it requires little consideration. In *Duvall v. Attorney General*, 436 F.3d 382 (3d Cir. 2006), we said that procedural due process in an agency setting does not demand the application of preclusion principles. *Id.* at 386-87 ("The only constraint on [Congress's authority to prescribe agency procedures] is the Constitution, embodied primarily in the requirement of 'due process.' Collateral estoppel is not constitutionally mandated[.]" (citations omitted)). That conclusion seems fully applicable here. Nevertheless, we caution that state universities do not have unbridled discretion to subject a student to repetitive disciplinary hearings. As we noted in *Duvall*, such repetition may well implicate substantive due process concerns. *Id.* at 387 n.5.

14

**III.    CONCLUSION**

For the foregoing reasons, we will vacate the District Court's judgment and remand the § 1983 claim against both Temple and Dean Ismail and the state law claims.  We will affirm the judgment with respect to the § 1983 claim against Associate Dean Sperrazza.

15